UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WALL ART DISTRIBUTORS, INC., | Civil Action No.: 7:24-cv-03695-PMH |
| Plaintiff, | Document Filed Electronically |
| v. | |
| MERCH TRAFFIC, LLC, | |
| Defendant. | |

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Wall Art Distributors, Inc. ("Wall Art"), by and through its attorneys, Genova Burns LLP, by way of First Amended Complaint against Defendant Merch Traffic, LLC ("Merch"), alleges as follows:

### INTRODUCTION

1. Wall Art operates a "print on demand" company, selling artwork, prints, and posters to the end-user consuming public for their personal use, and not for further resale, copying or distribution. Wall Art licenses and sells a variety of images including images licensed from individuals and companies. Wall Art (like many companies) uses on-line marketplaces (such as Walmart) as a platform to sell its products.

2. At issue in this case are 8" x 10" and 16" x 20" reprints of photographs sold by Wall Art, as licensed from agents of the photographs' copyright owners. The photographs depict celebrities at public events where the celebrities have appeared. Examples of the photographs at issue are:






3. Owners of copyrights have a powerful tool in their arsenal if they believe their copyrights are being posted on a third-party website without license or authorization, thus infringing their rights. Instead of filing suit or seeking an injunction, copyright owners can serve a takedown notice under the Digital Millenium Copyright Act ("DMCA") and, in order for the website to claim immunity from liability, the website *must* take the allegedly infringing image

down until it receives a valid counter-notice.

4. In Wall Art's case, however, the owner of the copyrights for the photographs—the photographers and not the Defendant—licensed their copyrights to Wall Art through an agent, companies like the Everett Collection ("Everett"). Wall Art is licensed to print and sell copies of the photographs to private end users in exchange for a percentage of the revenues. This is a typical way that copyright owners can exploit one of the exclusive rights granted by the Copyright Act.

5. Enter Defendant, Merch Traffic, LLC. Merch does not—and cannot—contend it owns or has any rights of copyright for the photographs at issue in this case. Yet, Merch wrongfully served DMCA Takedown Notices on Walmart, where Wall Art sells prints of those licensed, copyrighted photographs, for 47 photographs. In those Takedown Notices, Defendant affirmed for each, *under penalty of perjury*, that Merch had the right to enforce rights of copyright for the photographs. Merch had no such rights.

6. Wall Art promptly challenged Merch's wrongful claims under the DMCA. When Wall Art served its "Counter-Notices," it explained that it had licensed the right to re-print, distribute and resell the photographs under license from the copyright owners.

7. Thus challenged, Merch reversed its position and admitted that it had no rights of copyright to assert, and, instead, now claimed that it was asserting a "right of publicity" on behalf of its clients, the celebrities in the photographs. The DMCA, however, does not protect rights of publicity.

8. Merch has since withdrawn some (though not all) of its Takedown Notices. But the harm caused by Merch's wrongful DMCA Takedown Notices was already done, and is continuing. The DMCA was not intended to allow parties like Merch to assert intellectual property rights other than copyright.

9.      Instead of sending a demand or filing a lawsuit (and seeking a preliminary injunction), Merch circumvented the judicial process and misused the DMCA to obtain, in effect, an injunction against Wall Art.  As a result, Wall Art was not only deprived the ability to sell photographs authorized by the copyright owner, but Walmart, in response to notifications of the Takedown Notices, suspended Wall Art, leading to disruption in its ability to operate on the Walmart Marketplace for months.

10.     Wall Art reached out to Merch to seek withdrawal of the Takedown Notices. Merch has now done so for some of the images, but Walmart continues to alert Wall Art to the Takedown Notices served by Merch, which continues to harm and damage Wall Art.  In its communications with Merch, Wall Art has requested verification of Merch's claim to own, or have a license to, the names and likenesses of the celebrities depicted in Wall Art's photographs.  Merch has not responded with any degree of clarity to dispel Merch's dubious assertion of any rights of publicity. Further, Merch has threatened to continue to assert its right of publicity claims for photographs of the numerous celebrities it purports to represent.

11.     Celebrities who appear at public events—with photographers and media invited—consent to have their photograph taken. Photographers like those who took the photographs at issue, own the copyright in the artistic works that they create. The sale of the resulting photographs represents the creative work of photographers and those photographers have the right to license their rights of copyright to companies like Wall Art.

12.     Even if the sale of the photographs that Wall Art sells touches on a right of publicity, such state law rights are preempted by the Copyright Act to the extent that a party, as Merch has done here, seeks to use those state law rights as a surrogate or proxy for rights of Copyright, which Merch has admitted it does not have.  The Copyright Act grants photographers

the exclusive right to reproduce their copyrighted works. Well established law precludes the use of the state law right of publicity to impede the goals of the Copyright Act, which preempts state law claims that are, or are claimed to be, equivalent to rights of copyright.

13. Wall Art is, therefore, entitled to recoup the damages it has suffered, and will continue to suffer, because of Merch's improper use of the DMCA and its commission of related torts, to a declaratory judgement that the licensed reprinting and sale of the copyrighted photographs licensed to Wall Art does not, as a matter of law, violate the Copyright Act or subject's right of publicity, and to damages arising proximately from Merch's intentional interference with Wall Art's business relationship with Walmart.

## **PARTIES**

14. Plaintiff Wall Art Distributors, Inc. is a New York Corporation with its principal place of business located at 19 Goshen Avenue, Washingtonville, New York.

15. Defendant Merch Traffic, LLC is, upon information and belief, a Delaware limited liability company conducting business in New York, with offices located at 430 W. 15th Street, 7th Fl., New York, NY 10011.

## **JURISDICTION AND VENUE**

16. The Court has jurisdiction over this action under 28 U.S.C. § 1331, because it arises under a federal law, namely, the Copyright Act, 17 U.S.C. § 101 *et seq*. and the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 512.

17. The Court has supplemental jurisdiction over Wall Art's state law claims under 28 U.S.C. § 1367, because they arise from the same case or controversy as Wall Art's federal statutory claims.

18. Merch is subject to personal jurisdiction in New York under CPLR § 301 because

it conducts business continuously and systematically in New York and under CPLR § 302 because it is alleged to have committed tortious acts both within and without the State of New York and regularly does business in New York.

19. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(1) because Merch resides in the Southern District of New York and under § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the Southern District of New York.

## FACTS RELEVANT TO ALL COUNTS

### I. Wall Art's Sales on Walmart

20. Wall Art is a company specializing in the sale of unframed or framed fine art prints and canvas wall art.

21. Wall Art sells prints consisting of both public domain images and images licensed from a variety of sources, including various companies that work directly with artists and other copyright owners.

22. Wall Art sells prints through the on-line marketplace maintained by Walmart, Inc. (the "Walmart Marketplace").

23. For example, as detailed further below, Wall Art contracts with companies like the Everett Collection, https://everettcollection.com/#/home, which licenses copyrighted works from photographers who take photographs of various celebrities.

24. With respect to the licensed, copyrighted photographs it sells, Wall Art's contracts with companies like Everett authorize Wall Art to sell copies of these photographs to private end users.

25. Wall Art lists these images on its Walmart Marketplace page and offers customers

6

the option to purchase an 8" x 10" or 16" x 20" prints of licensed photographs.

26.     For example, Wall Art's page for a photograph unrelated to the ones at issue in this case shows the following, listing an 8" x 10" print at $14.25 and a 16" x 20" print at $23.14:



27.     Wall Art offers only 8" x 10" or 16" x 20" prints and does not alter or add other elements to the photographs. Wall Art offered the photographs at issue in this case for sale in similar fashion.

## II. Merch's Improper DMCA Takedown Notices.

28.     On or about February 16, 2024, Merch sent to Walmart, Inc. ("Walmart") approximately 47 notices under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(c)(3) (the "Takedown Notices") with respect to photographs being sold by Wall Art.

7

29. The Takedown Notices related to photographs of four celebrities, 50 Cent, Elton John, Harry Styles, and Chris Brown, all at public events. Specifically, the photographs at issue are as follows:

| Walmart Image ID # | Licensor | Photographed Celebrity |
|---|---|---|
| 649696328 | Everett Collection | 50 Cent |
| 5140119077 | Everett Collection | 50 Cent |
| 669004408 | Everett Collection | 50 Cent |
| 239147707 | Everett Collection | 50 Cent |
| 793601929 | Everett Collection | 50 Cent |
| 992849249 | Everett Collection | 50 Cent |
| 227352568 | Everett Collection | 50 Cent |
| 679583773 | Everett Collection | 50 Cent |
| 5109295290 | Everett Collection | 50 Cent |
| 5134462639 | Everett Collection | 50 Cent |
| 370350850 | Everett Collection | Elton John |
| 5141056646 | Everett Collection | Elton John |
| 776027022 | Everett Collection | Elton John |
| 5138665628 | Everett Collection | Elton John |
| 430563425 | Everett Collection | Elton John |
| 430389720 | Everett Collection | Elton John |
| 552632578 | Everett Collection | Elton John |
| 5140313676 | Everett Collection | Elton John |
| 530759525 | Everett Collection | Elton John |
| 183621064 | Everett Collection | Harry Styles |
| 510282127 | Everett Collection | Harry Styles |
| 690311140 | Everett Collection | Harry Styles |
| 169898037 | Everett Collection | Harry Styles |
| 599088075 | Everett Collection | Harry Styles |
| 427105326 | Everett Collection | Harry Styles |
| 545832883 | Everett Collection | Harry Styles |
| 136271148 | Everett Collection | Harry Styles |
| 171409085 | Everett Collection | Harry Styles |
| 222765115 | Everett Collection | Harry Styles |
| 5139466672 | Everett Collection | Chris Brown |
| 5111035346 | Everett Collection | Chris Brown |
| 5112681512 | Everett Collection | Chris Brown |
| 5139516239 | Everett Collection | Chris Brown |
| 5110488709 | Everett Collection | Chris Brown |
| 5109295221 | Everett Collection | Chris Brown |
| 5108798146 | Everett Collection | Chris Brown |
| 5140313722 | Everett Collection | Chris Brown |
| 5140119225 | Everett Collection | Chris Brown |
| 5110488295 | Everett Collection | Chris Brown |
| 5115946759 | Everett Collection | Chris Brown |

| Walmart Image ID # | Licensor | Photographed Celebrity |
|---|---|---|
| 5108798438 | Everett Collection | Chris Brown |
| 30795040 | Globe Photos, Inc. f/k/a Capital Art, Inc. ("Globe") | Elton John |
| 5134562029 | Globe | Elton John |
| 5137808021 | Globe | Elton John |
| 5137822974 | Globe | Elton John |
| 495326768 | Globe | Elton John |
| 5138309660 | Globe | Elton John |

30. For each of the Takedown Notices, as required under the DMCA, Merch certified, under penalty of perjury, that it was asserting a claim of copyright ownership with respect to the image at issue on its own behalf or other entities or individuals that own the copyright for the image.

31. Walmart notified Wall Art of the Takedown Notices, removed the noticed photographs from the Walmart Marketplace, and suspended Wall Art's ability to sell the photographs at issue.

32. Wall Art investigated and confirmed that the photographs raised by the Takedown Notices were licensed photographs.

33. Specifically, 41 of the 47 photographs were licensed from Everett pursuant to a Print on Demand License Agreement, dated June 15, 2016. In this Agreement, Everett authorizes Wall Art (through its affiliated entity, Posterazzi Corporation) to sell copies of digital files supplied by Everett for print-on-demand copies of the photographs (and expressly not for merchandising, or other advertising purposes). Everett represented that the photographers it works with own the copyright for the various works in its portfolio and Everett acts as those photographers' agent for purposes of licensing the right to reproduce and sell the photographs. Wall Art, in turn, is required to pay Everett a percentage of any gross sales from its Print on Demand sales.

34. The remaining 6 photographs were licensed to Wall Art from Globe Photos, Inc., f/k/a Capital Art, Inc. ("Globe") pursuant to a License Contract, entered into on or about July 2, 2017. Through that Agreement, Globe granted to Wall Art (through its affiliated entity, Posterazzi Corporation) a non-exclusive licensed to reproduce or have reproduced certain photographic works within the Globe's portfolio. Globe represented that the photographers it works with own the copyright for the various works in its portfolio and that Globe acts as those photographers' agent for purposes of licensing the right to reproduce and sell the photographs. In exchange, Wall Art is obligated to pay Globe a percentage of Wall Art's net sales.

35. After confirming that it had been licensed the right to reproduce and sell the photographs raised in the Takedown Notices, on or about February 29, 2024, Wall Art served Walmart with counter-notices under the DMCA, 17 U.S.C. § 512(g)(3), advising Walmart that it had a license to sell the identified images from the owner of the copyright or their agent.

36. On or about March 5, 2024, Wall Art received a notification from Walmart declining to republish the photographs because the claimant, identified as Merch, was asserting a "right of publicity claim" with respect to the individuals in the images.

37. On or about March 27, 2024, counsel for Wall Art wrote the attorney listed as the contact person for Merch in connection with the Takedown Notices and invited a conversation about Merch's purported claims.

38. In conversations in the ensuing weeks, counsel for Merch confirmed that Merch was not asserting a copyright claim for the photographs because the copyrights are owned by the various photographers.

39. Instead, Merch alleged that it enters into contracts with various celebrities, including, on information and belief, the subjects of the photographs at issue in the Takedown

Notices, which allegedly authorizes Merch to use and enforce, among other things, rights associated with those individuals' professional name and likeness. Merch indicated that it is authorized to act on those individuals' behalf with respect to their claims for the right of publicity, including in connection with legal actions. Wall Art has requested, but has not received, clear evidence supporting Merch's assertions.

### III.   Wall Art is Damaged by Merch's Improper Actions.

40. Wall Art has been damaged as a result of Merch's wrongful and statutorily prohibited issuance of the Takedown Notices, despite its belated admission (after it issued the Takedown Notices) that it does not assert ownership of any of the copyrights in the photographs at issue.

41. The sale of the photographs represent revenue that Wall Art has lost because the Takedown Notices have led to Walmart taking actions that impact Wall Art's ability to sell anything by suspending Wall Art from selling Wall Art's products on the Walmart website.

42. Specifically, on both February 2, 2024, and April 4, 2024, Walmart notified Wall Art that it was suspending Wall Art's account on the Walmart Marketplace for 7 days because of the number of "intellectual property" claims represented by Merch's wrongfully filed Takedown Notices. In each instance, it took several weeks for Wall Art to reinstate its account.

43. Over the past several years, Wall Art has averaged over $428,000.00 in annual gross sales on the Walmart Marketplace, and the continued periodic suspension of Wall Art's account and the repeated notices from Walmart even after Merch's withdrawal of the Takedown Notices, have caused and will continue to cause Wall Art to lose revenue.

44. In addition, the specter of additional Takedown Notices has a chilling effect on Wall Art's ability to sell products that it otherwise is authorized to sell.

11

45. Finally, even temporary suspensions of Wall Art on the Walmart Marketplace have a negative impact on Wall Art's rating and reputation on the Walmart Marketplace, which is a specific factor in consumers' choice of seller.

46. Thus, Merch's actions have already caused specific economic damages and will continue to do so in the future.

## COUNT I
### (Violation of DMCA, 17 U.S.C. § 512(f))

47. Wall Art repeats and realleges the foregoing paragraphs as though fully set forth herein.

48. In a takedown notice under the DMCA, a claimant is required to certify to a service provider, *under penalty of perjury*, that the claimant owns or is authorized to act on behalf of a person that owns an exclusive right of copyright in an identified copyrighted work that is alleged to infringe one of the exclusive rights of copyright set forth in Section 106 of the Copyright Act, 17 U.S.C. § 106.

49. In serving the Takedown Notices on Walmart, Merch certified under penalty of perjury, that it owned or was authorized to act on behalf of the owner of the copyright for the 47 photographs. That is not true.

50. Merch does not own any rights of copyright in the 47 photographs and has admitted that it is asserting not any exclusive rights under the Copyright Act, but instead, a right of publicity on behalf of the celebrities who are the subject of the licensed photographs sold by Wall Art.

51. Merch knew or should have known at the time that it submitted the Takedown Notices that the publication of the photographs on the Walmart Marketplace did not constitute action that infringed on a copyright. At a minimum, Merch had a duty to properly investigate and then define the precise basis for its claims, which duty the Merch breached.

12

52. Merch has violated the DMCA, 17 U.S.C. § 512(f).

53. Wall Art has a licensed right to sell copies of the photographs at issue in the Takedown Notices.

54. Merch's actions constituted an intentional, material misrepresentation and have directly caused economic damages to Wall Art, as further outlined above, and has also caused Wall Art to incur costs and attorneys' fees.

WHEREFORE, Wall Art respectfully demands a judgment against Merch:

    a. Awarding damages in an amount to be determined at trial.

    b. Enjoining Merch from issuing Takedown Notices in an effort to assert rights other than those under the Copyright Act.

    c. Awarding costs and reasonable attorneys' fees in accordance with 17 U.S.C. § 512(f).

    d. For such other and further relief the Court deems just and equitable.

## COUNT II
### (Tortious Interference with Business Relations)

55. Wall Art repeats and realleges the foregoing paragraphs as though fully set forth herein.

56. Wall Art has a business relationship with Walmart relating to Wall Art's sale of products on the Walmart Marketplace.

57. Merch was aware of Wall Art's business relationship with Walmart because Merch has a general understanding of the relationship between Walmart and sellers on the Walmart Marketplace and because Merch was, upon information and belief, aware of Wall Art's specific contractual relationship with Walmart in connection with the Walmart Marketplace.

58. Merch's issuance of DMCA Takedown Notices was wrongful and improper

because Merch knew that it did not have the ability or right to assert any of the rights guaranteed by the Copyright Act in the photographs subject to the Takedown Notices.

59. Specifically, Merch was well aware that it did not own a copyright in any of the photographs and was not authorized to assert copyrights for the photographs.

60. Merch nonetheless falsely misrepresented that it owned the copyrights for the photographs in an effort to impair and interfere with Wall Art's relationship with Walmart and to reduce Wall Art's standing on the Walmart Marketplace.

61. Merch's actions injured Wall Art's relationship with Walmart, which has, because of Merch's improper actions, flagged Wall Art as a repeat infringer of intellectual property and on several occasions suspended Wall Art's accounts.

62. Merch's wrongful actions have caused Wall Art to suffer economic damages.

WHEREFORE, Wall Art respectfully demands a judgment against Merch:

    a. Awarding damages in an amount to be determined at trial.

    b. For such other and further relief the Court deems just and equitable.

## COUNT III
### (Declaratory Relief – Right of Publicity)

63. Wall Art repeats and realleges the foregoing paragraphs as though fully set forth herein.

64. Merch has contended that Wall Art's sale of the 47 photographs violates the depicted celebrities' rights of publicity and that it is authorized to enforce those rights on behalf of the celebrities at issue.

65. New York law recognizes only a narrow, statutory right of publicity under Civil Rights Law § 51.

66. To assert a claim for violation of the celebrities' right of publicity, Merch must

successfully show that the photographs were used "for advertising purposes or for the purposes of trade without [] written consent." Civil Rights Law § 51.

67. New York law does not protect the disclosure of photographs or other depictions of persons in connection with a newsworthy event.

68. Further, when a public figure participates in a public event, they may waive the right to invoke the protections of Civil Rights Law § 51.

69. Merch has threatened to continue to invoke the right of publicity as to the photographs at issue and similar photographs.

70. Merch cannot, however, establish as a matter of law that the rights of publicity are protectible under Civil Rights Law § 51.

71. The photographs at issue in the Takedown Notices each contain an image of a celebrity voluntarily appearing at a public event. Celebrities at public events are inherently newsworthy events that are unprotected by Civil Rights Law § 51.

72. Further, in participating in those types of public events, the celebrities have effectively waived the protection of Civil Rights Law § 51.

73. In addition to the photographs subject to the Takedown Notices, Merch has threatened to continue issuing takedown notices and seeking damages for other photographs sold by Wall Art that contain images of celebrities represented by Merch. Merch has also threatened to bring a claim or counterclaims with respect to the 47 photographs and others that Wall Art sells.

74. As such, there is an actual controversy between the parties about the applicability of the right of publicity to the photographs subject to the Takedown Notices and similar photographs sold by Wall Art containing images of celebrities represented by Merch.

WHEREFORE, Wall Art respectfully demands a judgment against Merch:

a.  Declaring that Merch has no valid right of publicity claim in connection with the sale or resale of photographs of Merch's celebrity clients at public events.

b.  For such other and further relief the Court deems just and equitable.

### COUNT IV
### (Declaratory Relief - Preemption under Copyright Act, 17 U.S.C. § 301(a))

75.  Wall Art repeats and realleges the foregoing paragraphs as though fully set forth herein.

76.  Even if Merch can claim a right of publicity in the photographs subject to the Takedown Notices (as well as other photographs sold by Wall Art of celebrities represented by Merch), any such common law right is preempted by the Copyright Act.

77.  Under the Copyright Act, 17 U.S.C. § 301(a), a state law is preempted if the "claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works" (the "subject matter test") and "the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law" (the "general scope requirement"). *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 301 (2d Cir. 2022).

78.  Both tests are met here: the photographs subject to the Takedown Notices are copyrighted works under the Copyright Act, 17 U.S.C. § 102(a).

79.  Further, the Copyright Act provides an exclusive right to reproduce and license for reproduction copyrighted visual works, like photographs. 17 U.S.C. § 106(1) & (3).

80.  Here, the photographers and owners of the copyrights at issue were asserting this right by licensing the reproduction of their copyrighted works to Wall Art (through an agent, Everett or Globe).

81.  Merch seeks to assert a right of publicity based on the same rights afforded to the

copyright owners under the Copyright Act.

82. As such, Merch's right of publicity, if valid, is nonetheless preempted by the Copyright Act.

WHEREFORE, Wall Art respectfully demands a judgment against Merch:

a. Declaring that Merch's right of publicity in the photographs is preempted by the Copyright Act, 17 U.S.C. § 301(a).

b. For such other and further relief the Court deems just and equitable.

## JURY DEMAND

Wall Art demands a trial by jury of all issues so triable pursuant to Fed. R. Civ. P. 38.

Respectfully submitted,

**GENOVA BURNS LLP**

Dated: August 2, 2024          By: /s/ Lawrence Bluestone
                                   Lawrence Bluestone (LB0586)
                                   115 Broadway, 15th Floor
                                   New York, New York 10006
                                   Tel. (973) 533-0777
                                   Fax (973) 533-1112
                                   lbluestone@genovaburns.com

                                   *Counsel for Plaintiff*
                                   *Wall Art Distributors, Inc.*

17579711v4 (24041.004)